IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS ÁNGEL PARRILA SANES,

Petitioner

v.

UNITED STATES OF AMERICA,

Respondent

CIVIL 02-2529 (PG)
(CRIMINAL 98-123 (PG))

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I. INTRODUCTION

This matter is before the court on petitioner Luis Ángel Parrilla Sanes' (hereinafter "petitioner") motion to vacate sentence under 28 U.S.C. § 2255 filed on October 11, 2002. Petitioner and another defendant were indicted on June 3, 1998 with knowingly, wilfully, unlawfully, and intentionally combining, confederating, and agreeing with each other and others known and unknown to commit offenses against the United States to knowingly and intentionally possess with the intent to distribute, and import, in excess of five kilograms of cocaine. Petitioner went to trial and was found guilty on May 6, 1999. He was sentenced on September 17, 1999. Petitioner appealed the sentence. In a nutshell, petitioner challenges his concurrent sentences of 292 months in prison, claiming that the court committed error when it failed to voir dire two jurors whom petitioner overheard saying he was guilty. Petitioner also attacks the court's failure to submit the question of drug quantity to

CIVIL 02-2529 (PG)                                      2
(CRIMINAL 98-123 (PG))

the jury, as well as the sentence enhancing factors such as obstruction of justice and weapons possession.[1]

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Petitioner and a co-defendant were indicted on June 3, 1998 in two counts of a three-count indictment with knowingly, wilfully, unlawfully, and intentionally combining, confederating, and agreeing with each other and others known and unknown to commit offenses against the United States to knowingly and intentionally possess with the intent to distribute (Count I), and import (Count II), in excess of five kilograms of cocaine, a Schedule II narcotic drug controlled substance.  Petitioner was the only defendant to go to trial.  Trial commenced on May 3, 1999 and petitioner was found guilty on May 6, 1999.  Two other defendants were charged in Count III with misprison of felony.  Petitioner was sentenced on September 17, 1999.[2]  Having considered objections by petitioner during the sentencing process, the court entered into the following sentencing guidelines calculations.  The Base Offense Level was determined of at least 50 kilograms but less than 150 kilograms of cocaine, that is, 36.  The court increased the Base Offense

---

[1] Petitioner points out for the sake of clarity that the trial and sentencing took place after Jones v. United States, 526 U.S. 227 (1999) (March 24, 1999) was decided but before Apprendi v. New Jersey, 530 U.S. 466 (2000) (June 26, 2000).

[2] Petitioner has added a Blakely claim (Blakely v. Washington, 124 S. Ct. 2531 (2004)) to the 2255 motion although Blakely was decided in 2004, petitioner was sentenced in 1999, and Blakely does not apply retroactively.  Indeed when petitioner was sentenced, the court was required to follow the sentencing guidelines.

CIVIL 02-2529 (PG)                                      3
(CRIMINAL 98-123 (PG))

Level by 2 levels since a dangerous weapon was possessed. Another 2 level increase was attributed to an obstruction of justice so that the Total Adjusted Offense Level was 40. With a Criminal History Category of I, the applicable sentencing range was 292-365. The court then sentenced petitioner to the lower end of the range, 292 months. The petitioner appealed his conviction in the United States Court of Appeals for the First Circuit. On April 9, 2001, the appellate court affirmed petitioner's conviction in an unpublished opinion. United States v. Parrilla Sanes, No. 99-2158, slip op.; 6 Fed. Appx. 38, 2001 WL 355563 (1st Cir. Apr. 9, 2001). Apprendi had been decided while the appeal was pending and the court, while finding error, found no plain error. The appellate court directed clerical corrections to the judgment. A petition for a writ of certiorari was filed and certiorari was denied. Parrilla-Sanes v. United States, 534 U.S. 937 (2001). The matter was referred to me on October 28, 2002. (Docket No. 3.)

Petitioner argues in a comprehensive, candid and thoughtful memorandum of law that he suffered the results of juror misconduct, ineffective assistance of counsel, and the court's failure to take action regarding the same, including failure to voir dire the jury or to give a curative instruction. While not so much emphasizing that counsel's handling of the drug quantity issue reaches a Sixth Amendment violation, petitioner adds a claim under Blakely v. Washington, 124 S.

CIVIL 02-2529 (PG)                                    4
(CRIMINAL 98-123 (PG))

Ct. 2531 (2004), focusing on the enhancement for drug amounts, weapons, and the 2-level enhancement related to obstruction of justice.

### III.  DISCUSSION

Under section 2255 of title 28, United States Codes, a federal prisoner may move for post-conviction relief if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; or (2) the court was without jurisdiction to impose such a sentence; or (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255; see also Hill v. United States, 368 U.S. 424, 426-27 (1962); David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).  The burden is on the petitioner to show his or her entitlement to relief under section 2255, David v. United States, 134 F.3d at 474, including his or her entitlement to an evidentiary hearing. Cody v. United States, 249 F.3d 47, 54 (1st Cir. 2001) (quoting United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993)).  It has been held that an evidentiary hearing is not necessary if the 2255 motion is inadequate on its face or if, even though facially adequate, "is conclusively refuted as to the alleged facts by the files and records of the case."  United States v. McGill, 11 F.3d at 226 (quoting Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974)).  "In other words, a '§ 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state

CIVIL 02-2529 (PG)                                  5
(CRIMINAL 98-123 (PG))

conclusions instead of facts, contradict the record, or are 'inherently incredible.'" United States v. McGill, 11 F.3d at 226 (citations omitted).

### A. The Apprendi Challenge

Petitioner challenges his sentence by way of a section 2255 motion, arguing that in accordance with the rule of Apprendi, the determination of both drug quantity and as well as issues dealing with enhancement factors had to be submitted to the jury and proved beyond a reasonable doubt because they were considerations increasing the prescribed statutory maximum for the offense charged, that is, the default statutory maximum of 20 years. The government contends that in accordance with the principles established in Apprendi and its First Circuit progeny, no violation occurred with regards to petitioner's sentence.

### 1. Drug Quantity

Before Apprendi, drug type and quantity were not elements of the offense, but, rather, as occurred in petitioner's case, sentencing factors relevant to determining the penalty. United States v. Eirby, 262 F.3d 31, 36 (1st Cir. 2001); United States v. Lindia, 82 F.3d 1154, 1161 n.6 (1st Cir. 1996); United States v. Mabry, 3 F.3d 244, 250 (8th Cir. 1993); United States v. Moreno, 899 F.2d 465, 472-73 (6th Cir. 1990). However, in Jones v. United States, 526 U.S. 227 (1999), the Supreme Court questioned the "constitutionality of enhancing penalties through judicial findings by a preponderance of the evidence." United States v. Angle, 230 F.3d 113, 121 (4th

*1* CIVIL 02-2529 (PG)                               6
*2* (CRIMINAL 98-123 (PG))

*4* Cir. 2000); see also Jones v. United States, 526 U.S. at 243 n.6.  Nevertheless,

*5* circuit courts interpreted Jones v. United States "as a suggestion rather than an

*6* absolute rule.  Thus, they continued to view drug quantity as a sentencing factor."

*7-8* United States v. Angle, 230 F.3d at 122; see also United States v. Thomas, 204 F.3d

*8-9* 381, 384 (2nd Cir. 2000); United States v. Jones, 194 F.3d 1178, 1186 (10th Cir.

*9-10* 1999); United States v. Williams, 194 F.3d 100, 107 (D.C. Cir. 1999).

*11-12* I will examine petitioner's meritorious Apprendi issue with the advantage that

*12-13* the court of appeals has already found that an Apprendi violation has occurred but,

*13-14* having reviewed the error under the plain error standard, found no plain error.

*14-15* Had the court sentenced petitioner below the default statutory maximum, no

*16* Apprendi issue would have arisen.

*17-18* In Apprendi, the Court held that "[o]ther than the fact of a prior conviction,

*18-19* any fact that increases the penalty for a crime beyond the prescribed statutory

*19-20* maximum must be submitted to a jury, and proved beyond a reasonable doubt."

*21* Apprendi v. New Jersey, 530 U.S. at 490; see also United States v. Mojica-Báez, 229

*22* F.3d 292, 306 (1st Cir. 2000); Sustache-Rivera v. United States, 221 F.3d 8, 15 (1st

*23-24* Cir. 2000).  Yet, the Apprendi Court made clear that judicial discretion can be

*24-25* exercised when imposing sentence within statutory limits prescribed by a legislature

*26* and facts found by a jury.  Apprendi v. New Jersey, 530 U.S. at 481-82.

CIVIL 02-2529 (PG)                          7
(CRIMINAL 98-123 (PG))

The required examination of the issue raised by petitioner focuses on one question– "does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" Apprendi v. New Jersey, 530 U.S. at 494. In response, no Apprendi violation occurs if the district court sentences the defendant within the prescribed statutory range "even though drug quantity, determined by the court under a preponderance-of-the-evidence standard, influences the length of the sentence imposed." United States v. Robinson, 241 F.3d 115, 119 (1st Cir. 2001) (citing United States v. Caba, 241 F.3d 98, 100-01 (1st Cir. 2001); United States v. Baltas, 236 F.3d 27, 41 (1st Cir. 2001)). In other words, it is now well established that "if the judge-made factual determination merely narrows the judge's discretion within the range already authorized by the offense of conviction, then no Apprendi violation occurs." United States v. Baltas, 236 F.3d at 41. In this case, the trial judge did not present the issue of drug quantity to the jury, as was the custom of the circuit trial courts at the time.  Because the defendant's sentence exceeded the default 20-year maximum sentence, Apprendi was implicated. See United States v. Robinson, 241 F.3d at 199-20. The issue of quantity should have thus gone to the jury. As the appellate court noted in the unpublished opinion affirming the conviction, the uncontested testimony of the forensic chemist established the drug amount, and that amount was never put in controversy. At very least, thus, there was no plain error. While there was an Apprendi violation,

CIVIL 02-2529 (PG)                                        8
(CRIMINAL 98-123 (PG))

because there was more than enough evidence at trial to sustain the amount of drug attributable to petitioner, petitioner's attack results in a Pyrrhic victory, as petitioner candidly admits in his memorandum.

### 2. Obstruction of justice

Next is petitioner's claim that the 2-level enhancement cannot be upheld because it was based on a judge-made finding. The crux of petitioner's contention is that it is illegal to increase the sentence based on facts not submitted to the jury and found by them beyond a reasonable doubt and found instead by the sentencing judge using a preponderance of the evidence standard. The government responds that the court correctly applied the sentencing guidelines in effect at the time of sentencing.

The court of appeals considered petitioner's complaint of a 2-level adjustment under U.S.S.G. § 3C1.1 for obstruction of justice, an enhancement arising from his attempt to tamper with potential witnesses. This resulted in the pretrial revocation of his bail. Petitioner did not dispute that attempted subordination of perjury warranted an obstruction-of-justice enhancement. The issue was determined to be without merit by the court of appeals. There is no reason why it should become meritorious on collateral review.

Finally, just as judges were required to apply the guidelines in a mandatory fashion until recently, now the courts are required to apply them in an advisory

CIVIL 02-2529 (PG)                                9
(CRIMINAL 98-123 (PG))

fashion. 18 U.S.C. §§ 3553(a)(4),(5) (Supp. 2004); United States v. Booker, 125 S. Ct. 738, 767 (2005). Like Blakely, Booker is not retroactive. See McReynolds v. United States, 397 F.3d 479, 480 (2nd Cir. 2005), cert. denied, 2005 WL 1105926 (U.S. June 6, 2005) (holding that Booker does not apply retroactively to collateral proceedings under § 2255); see also Guzmán v. United States, 404 F.3d 139, 140 (2nd Cir. 2005); Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005); Humphress v. United States, 398 F.3d 855, 860-63 (6th Cir. 2005). None of the announced guideline-related rules have been applied retroactively to cases on collateral review. See Schriro v. Summerlin, 124 S. Ct. 2519 (2004), where the Supreme Court concluded that the new requirements in Ring v. Arizona, 536 U.S. 584, 602 (2002), which, like Blakely and Booker, applied Apprendi principles, do not apply retroactively to cases on collateral review. Schriro v. Summerlin, 124 S. Ct. at 2526; Varela v. United States, 400 F.3d at 867. This court has a clear directive from the Supreme Court not to apply the Apprendi principles retroactively. Notwithstanding petitioner's counsel's noble effort, it fails.

> 1. Ineffective Assistance of Counsel Standard

As stated above, a prisoner in custody under a federal sentence may move under section 2255 to vacate, set aside or correct a sentence imposed in violation of the Constitution of the United States. Daniels v. United States, 532 U.S. 374, 377 (2001). A claim of ineffective assistance of counsel is, without question, one such

CIVIL 02-2529 (PG)                                    10
(CRIMINAL 98-123 (PG))

constitutional violation that may be raised by way of a 2255 motion. See <u>United States v. Kayne</u>, 90 F.3d 7, 14 (1st Cir. 1996). To be successful in an ineffective assistance of counsel challenge, a petitioner must allege that the deficiencies in the performance of trial counsel assumed unconstitutional dimensions. <u>Barrett v. United States</u>, 965 F.2d 1184, 1193 (1st Cir. 1992). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).

    The Court in <u>Strickland</u> established that the determination of whether an attorney's performance require the reversal of a conviction or sentence must be resolved applying a two-prong test. <u>Id.</u> at 687. First, petitioner must show that counsel's performance was deficient by in turn "showing that counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> Second, it must be shown that petitioner was prejudice by such deficient performance. <u>Id.</u> In order to establish a deficient performance, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 688. To show prejudice, on the other hand, petitioner has to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

CIVIL 02-2529 (PG)                              11
(CRIMINAL 98-123 (PG))

been different." Id. at 694; González-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001).

## JUROR MISCONDUCT

Petitioner extensively argues that the court committed error in not inquiring of the jury regarding the incident of jurors commenting on petitioner's guilt and making up their mind prior to deliberation. The matter was raised by counsel at the end of the trial and the court gave the matter little importance. As both parties note in their memoranda, the trial judge has abundant discretion to fashion any appropriate remedy or procedure to determine whether jury misconduct actually occurred, and if so, whether it was prejudicial. The first step that the court must take in such an allegation is whether the claim is colorable before determining that it must conduct an investigation into the misconduct. United States v. Mikutowicz, 365 F.3d 65, 74 (1st Cir. 2004).

During the rebuttal closing argument, at sidebar, defense counsel informed the court that petitioner overheard jurors stating that he was guilty. Petitioner addresses this issue in a comprehensive fashion but the court never went beyond the stage of determining whether the allegation was colorable. First, the allegation is, if anything, conclusory. It was not raised at the court of appeals. Even in this motion to vacate sentence, other than the conclusion that a juror or jurors said he was guilty, there is no sworn or unsworn statement by petitioner which would put

CIVIL 02-2529 (PG)                              12
(CRIMINAL 98-123 (PG))

the court on notice that any portentous act had occurred. There were no witnesses to the statements except for petitioner and the court might naturally have thought the allegation to be a delaying tactic in what ultimately was a losing battle. As to whether counsel's action or inaction was adequate in a Sixth Amendment sense, counsel in fact did notify the court of petitioner's allegations. As ethereal and unlikely as the court considered petitioner's alleged observations to be, it was not required to further conduct what would have been an extensive voir dire, and poll the jury, or give a curative instruction to a jury which had been and would be given instructions in relation to their duties as jurors. In short, while at first blush there is a hint that the allegation was placed aside too quickly, the allegation was not colorable and defense counsel did what he had to do to bring the matter to the court's attention.

Finally, but not to be considered a postscript, the judge's courtroom has a layout which would make it fairly impossible and extremely unlikely for the petitioner to hear a juror commenting on his guilt without either a marshal, courtroom deputy, court reporter, or, indeed, the trial judge also hearing the comment. Petitioner was seated at the defense table which, as one faced the bench in the year 2001, was perpendicular to and near the right wall of the courtroom, with chairs facing the judge. As one faces the bench, the jury box is parallel to the left wall of the courtroom and the prosecutor's table is to the immediate right of the

CIVIL 02-2529 (PG)                                              13
(CRIMINAL 98-123 (PG))


jury well.  The defense and prosecution tables were then separated by a space of about 10 to 15 feet in the year 2000.  From the jury box to the far wall, the distance would be 40 to 45 feet.  The judge might very well have thought how it was that petitioner could hear something from the jury that the judge did not hear.  Thus the court's understandably skeptical reaction.  This experienced trial judge and former federal prosecutor clearly had grounds for not giving weight to counsel's relating what petitioner had told him.  The judge gave appropriate jury instructions before each break and at the end of each day.  The jury was well instructed not to discuss the case among themselves and to keep an open mind.  But more importantly, petitioner subsequently had an outburst where he jumped up and yelled in front of the jury "YOUR HONOR, THE TRUTH HAS TO BE SAID!"  The jury was excused and in the ensuing dialogue with the court, petitioner did not raise the issue of any juror stating that he was guilty, but rather argued factual issues related to the evidence.  In other words, petitioner stopped giving the matter importance while the alleged incident was fresh not only in his mind but in the scenario of the trial.  Judges are not called upon to believe what no one else would believe under the same circumstances.  See Watts v. Indiana, 338 U.S. 49, 52 (1949) (citing Child Labor Tax Case (Bailey v. Drexel Furniture Co.), 259 U.S. 20, 37 (1922)).

CIVIL 02-2529 (PG)                                14
(CRIMINAL 98-123 (PG))

## LIMITATIONS

Finally, the United States argues that the petition is time-barred. The petition for a writ of certiorari was entered on October 1, 2001 and the present motion to vacate sentence was filed in this court on October 11, 2002. The Antiterrorism and Effective Death Penalty Act instituted a limitations period of one year from the date on which a prisoner's conviction became final within which to seek federal habeas relief. See Pratt v. United States, 129 F.3d 54, 58 (1st Cir. 1997). The current petition apparently was filed well over a year from the date petitioner's sentence became final and unappealable.

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which instituted a time limitation period for the filing of motions to vacate or reduce criminal federal sentences. In its pertinent part, section 2255 reads:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–
> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by government action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such government action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been

CIVIL 02-2529 (PG)                                    15
(CRIMINAL 98-123 (PG))

>        newly recognized by the Supreme Court and made
>        retroactively applicable to cases on collateral review; or
>        (4) the date on which the facts supporting the claim or
>        claims presented could have been discovered through the
>        exercise of due diligence.

28 U.S.C. § 2255, ¶ 6.

At first blush, the argument of the United States, that the petition is time-barred, is correct. Petitioner signed his petition on September 24, 2002, which in itself is not conclusive. However, he deposited the petition in the prison mail system on or before September 28, 2002, well before the last date of the filing period. See Houston v. Lack, 487 U.S. 266, 270-71 (1988); Morales Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). Therefore, one is forced to conclude, under the prison mailbox rule, that petitioner's claim is not time barred.

In view of the above, I recommend that the motion to vacate sentence be denied without evidentiary hearing.

Under the provisions of Local Rule 72(d), any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973

CIVIL 02-2529 (PG)                              16
(CRIMINAL 98-123 (PG))

F.2d 22, 30-31 (1st Cir. 1992); <u>Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.</u>, 840 F.2d 985 (1st Cir. 1988); <u>Borden v. Sec'y of Health & Human Servs.</u>, 836 F.2d 4, 6 (1st Cir. 1987); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980).

     At San Juan, Puerto Rico, this 9th day of June, 2005.

                                                    S/ JUSTO ARENAS
                                 Chief United States Magistrate Judge